FLORIDA EAST COAST RAILWAY COMPANY, a corporation, *Petitioner,* v. MRS. J. H. ANDERSON, joined by her husband, J. H. ANDERSON, *Respondents.*

148 So. 553.
Opinion filed May 23, 1933.

. *Robert H. Anderson,* of Jacksonville, Florida, and *Loftin, Stokes & Calkins* of Miami, Florida, Attorneys for Petitioner.

*Patterson & Knight* and *W. Clifton Green* of Miami, Florida, Attorneys for Respondent.

HARRISON, Circuit Judge.—This cause is before this Court upon a writ of *certiorari* to the Circuit Court of Dade County, Florida, to review the judgment of that Court affirming, with order for remittitur, the judgment of the Civil Court of Record of Dade County recovered against the petitioner and in favor of the respondent in a civil suit for damages sustained to certain baggage while stored in the warehouse of the petitioner at Miami, Florida.

On the 7th day of February, 1927, declaration was filed in the trial court.

The petitioner suggests the following questions as being involved in the consideration of this cause:

(1.) Should the Judge of the Civil Court of Record, at the request of the defendant, at the conclusion of all of the evidence, have directed the jury to return a verdict for the defendant, when the trial court evidently proceeded on the theory that the defendant was liable as a common carrier, and the evidence disclosed that the relation of the defendant to the damaged parcel of baggage was that of warehouseman, and the baggage was damaged by rain water which entered the baggage room through glass windows broken at night by debris blown against the window on the outside during the second greatest storm in the history of the Miami Weather Office, and the employees of the Company, fourteen in number, did everything possible to avert damage to several hundred trunks in the baggage room, the plaintiff's trunk being one which she allowed to remain in the baggage room from 11:20 on the morning of October 17, 1926, to the night of October 19, when the great storm devastated the Miami district?

In answering this question, reference to the declaration discloses that the same contains but one count, and while there are many allegations referring to the petitioner as a common carrier and relating to the obligations to the respondent as such common carrier, to transport the respondent and her said baggage, the negligence complained of is clearly alleged to have occurred at a time while respondent's said baggage was in storage in petitioner's baggage room at Miami. The specific negligence charged is that petitioner, by the careless and negligent manner in which it kept and maintained the said trunk and its contents, great quantities of water was allowed to damage said trunk and contents, the said trunk having been left in the defendant's baggage room on the ground floor and to stand and be in water for such period of time that said trunk and contents were completely destroyed and rendered of no value

whatsoever. The declaration further alleges that respondent paid to petitioner sixty-six cents as the usual charge exacted for the storage of the said baggage.

The second plea of the defendant is in full harmony with this portion of the declaration in that it likewise alleges the baggage was in storage in the baggage room of the petitioner.

It therefore became incumbent, and was the duty of the trial court to submit the same, under the pleadings in the case, to the jury.

In considering this question the record disclosed the petitioner herein demurred to the declaration and upon the overruling the same, pleas were filed. If the petitioner considered the declaration duplicitous this question should have been raised by proper motion. That is held in the case of Blue v. Staten, reported in 84 Fla. 274, 93 So. 687, *viz.*:

"Because two causes of action are contained in one count, the declaration would have been amenable to objections upon the ground of duplicity. At common law this objection could have been raised by special demurrer only, but in this jurisdiction special demurrers in common law actions have been abolished. The question could have been presented by motion for compulsory amendment under the statute, but not to present the point until after verdict is to waive it. If either cause of action alleged is supported by the evidence the judgment should stand."

This first question suggests that the said baggage was damaged by rain water which entered the baggage room through glass windows, broken at night by debris blown against them, on the outside, during the second greatest storm in the history of the Miami Weather Office, and that some fourteen employees of the petitioner did everything possible to avert the damage to several hundred trunks.

The negligence alleged by the declaration is the permitting

of respondent's trunk to stand and remain in water on the ground floor, which conditions two witnesses testified were evident on the date the baggage was received by the respondent.

The second question involved, according to petitioner, is: "Should the trial court direct a verdict for the defendant, at the defendant's request, at the conclusion of all of the evidence, where the plaintiff sues the defendant as a common carrier for damage to a parcel of baggage left in the defendant's baggage room from 11:20 A. M., on one day to the night of the third day, and the evidence clearly discloses that the relation of the defendant to the baggage, at the time it was damaged, was that of warehouseman? Is there a fatal variance between the *allegata* and the *probata?*"

The pleadings in this action clearly show an action against the petitioner as a warehouseman, and there was ample evidence under which the jury could find in favor of the respondent upon the issue as made by the pleadings.

Should further answer be required or necessary as to questions one and two, reference should be made to instructions numbered five and seven given by the trial court at the request of petitioner. Under instruction number five, the court charged, among other things, as follows:

"Under the undisputed evidence in this case it is my duty to instruct you that at the time the rain storm occurred the character of the defendant was not that of carrier, but that of a warehouseman in respect to plaintiff's baggage."

And in instruction number seven, the court instructed the jury, among other things as follows:

"Under the facts in this case, it has been shown as a matter of law, that a reasonable time elapsed for the plaintiff to remove her baggage after its arrival in Miami, and after its lapse the defendant was relieved of its responsibility as a common carrier for the delivery of said baggage,

and unless you find that the damage to the plaintiff's baggage was occasioned proximately by some negligence on the part of the defendant it will be your duty as jurors to find for the defendant."

The third question suggested is as follows:

"Is it reversible error for the trial court to instruct the jury on the theory that the relation of common carrier, and therefore of insurer, existed between a railroad company and the owner of a parcel of baggage, damaged by rain water until in the defendant's baggage room, when the evidence clearly discloses that the relation was that of warehouseman and not of common carrier?"

Answering this question, the record discloses in this case, as shown above, that the court instructed the jury the relation of warehouseman existed and that the relation of common carrier did not exist at the time of the alleged damage to respondent's baggage.

It is true, instructions were given, at the request of respondent, relating to the liability of a common carrier, and therefore of insurer. It further appears, however, that petitioner likewise requested several charges, which were given by the trial court, relating to common carriers. In instruction number two, given at the request of petitioner, it was charged among other things:

"The liability of a common carrier of baggage, or of a warehouseman, does not embrace loss caused by an act of God."

Again in instruction number eight, given at the request of petitioner, and which instruction follows those mentioned above wherein the court had positively instructed the jury that under the facts in this case and as a matter of law the defendant could only be held liable as warehouseman, the jury were instructed, among other things, as follows:

"If, under the facts in this case, at the time of the al-

leged damage to plaintiff's baggage, the defendant had ceased to be a carrier but had taken on the character of a warehouseman, I charge you that a warehouseman is not required by law to construct its buildings secure from all possible contingencies."

It therefore appears that petitioner, as well as respondent, requested charges relating to a carrier, and that the jury could not have been misled by reason of any charges relating to a carrier, due to the fact that they were charged as a matter of law that the liability of petitioner, if any, was that of a warehouseman.

The petitioner has cited the case of Escambia County Electric Light & Power Company against Sutherland (61 Fla. 167), 55 Sou. Rep. p. 83, text p. 89, in which is found the following statement:

"To state in one part of a charge to the jury that which makes a company furnishing electricity to its patrons a practical insurer of the safety of those patrons, and to state in another part of the charge that such company is not an insurer, is to state contradictory or repugnant propositions, and a charge containing contradictory propositions is universally held to be reversible error, unless the evidence is such that the jury could not have been misled.

"This principle of law is based on the fundamental law of thought called 'excluded middle'; that is, that of two contradictory or repugnant propositions one or the other must necessarily be false. There is no middle ground between such propositions and no rational way of harmonizing them. They are necessarily misleading and confusing when presented to a jury, and we are unable to say the plaintiff in error was not prejudiced by the instruction we have been considering."

In this case, the jury having been charged that the peti-

tioner was liable, if at all, only as a warehouseman, and while the charge relating to a common carrier should not have been given, there are no conflicting instructions as to the liability of the petitioner as a warehouseman.

The instructions given relating to the liability of a common carrier are of necessity in conflict with the instructions relating to the liability of a warehouseman, but since the instructions were given, above mentioned, at the request of petitioner, stating and re-stating that defendant's liability was only that of a warehouseman, if any, can it be said that the charges taken as a whole were calculated to confuse or mislead the jury? There were no conflicting instructions given relating to defendant's liability as a warehouseman, and the jury were positively told that the petitioner was liable as a warehouseman only, in case it was liable at all.

In the case of Vanderpool v. Spruell, reported in 139 Sou. Rep. p. 892, opinion prepared by Mr. Justice DAVIS, now Chief Justice, it was held, as shown in text 895:

"Assuming that this court has jurisdiction, on a writ of *certiorari* to quash the judgment of a civil court of record affirmed by the circuit court, on the ground of improper charges given to the jury, it must be made to appear that the charges complained of were of such character that the trial and determination of the cause in accordance with said charges, if followed, would not be in accordance with the essential requirements of law. Mere errors in the giving of abstract or inappropriate charges are not fundamental, nor are they sufficient to warrant the quashing of the judgment. Mere errors, as such, are to be corrected by appellate proceedings, the jurisdiction to entertain and decide which is vested in the circuit court as the primary court of appeal and not in the Supreme Court on certiorari after the case

has been tried in the civil court of record and affirmed on appeal to the circuit court."

The fourth and last question suggested, is as follows:

## IV.

"Is it reversible error for a trial court to give to a jury instructions asked by the plaintiff and the defendant, respectively, when they are so irreconcilably in conflict and so diametrically contradictory that the jury, rather than the judge, would be obliged to determine the legal relations between the litigants, and the consequent duty owed by the defendant to the plaintiff, and then to determine which of the conflicting instructions correctly stated the applicable rules of law?"

This question, like several of the others, apparently overlooks facts set forth in the record before us. The trial court clearly told the jury which of the instructions to follow, namely, that the petitioner herein, defendant below, should be held liable only as a warehouseman if liability was shown at all. All other questions presented under this interrogation have been fully answered under the third question presented.

The charges relating to a common carrier were inappropriate and may perhaps have been reversible error, but the right to adjudge it so does not lie within the province of this court in a proceeding on *certiorari*.

A review of the testimony discloses that there was competent testimony upon which the jury, acting as reasonable men, could find in favor of respondent.

It is therefore ordered that the writ of *certiorari* be and the same is hereby quashed.

DAVIS, C. J., and WHITFIELD, and BUFORD, J. J., concur.

TERRELL and BROWN, J. J., dissent.